UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PINKFONG COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALIBABA.COM SINGAPORE E-COMMERCE PTE. LTD., et al., <br><br> Defendants. | 23 Civ. 10967 (DEH) <br><br> **<u>OPINION</u>** <br> **<u>AND ORDER</u>** |

DALE E. HO, United States District Judge:

      Plaintiff The Pinkfong Company, Inc. ("Pinkfong"), a global entertainment company, initiated this matter to prevent twenty-three e-commerce merchants ("Merchant Defendants") from selling products that allegedly infringed on their Baby Shark trademarks and copyright. Compl. ¶¶ 1, 6, 11, ECF No. 11.  The Merchant Defendants sell their allegedly infringing products on online platforms, including Alibaba and AliExpress (together, the "Alibaba Defendants").  *Id.* ¶¶ 46-47.  Pinkfong also seeks to hold Alibaba Defendants liable for their alleged infringement and role in allowing Merchant Defendants to continue selling allegedly infringing products on their online platforms.  *Id.* ¶¶ 70, 85, 89, 93.  Pinkfong asserts the following six claims against Alibaba Defendants: direct trademark infringement; false designation of origin, passing off, and unfair competition under the Lanham Act and New York law; contributory trademark infringement; contributory copyright infringement; and vicarious copyright infringement.  *See id.* ¶¶ 107-128, 137-174.  After Pinkfong obtained a temporary restraining order and a preliminary injunction, Alibaba Defendants moved to dismiss all six claims.  *See* ECF No. 37.  For the reasons discussed herein, Alibaba Defendants' motion to dismiss is **DENIED.**

1

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1] In assessing the complaint, "[a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. The Court must, however, disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**DISCUSSION**

**I. Direct Trademark Infringement.**

  *a. Impermissible Group Pleading*

First, Alibaba Defendants argue that Pinkfong's direct trademark infringement claim must be dismissed because Pinkfong engages in impermissible group pleading that does not comply with Rule 8.[2] Defs.' Mem. Supp. Mot. to Dismiss at 20-21, ECF No. 38. A complaint "satisfies the requirements of Rule 8(a) [when] it gives [each defendant] fair notice of the basis for [the plaintiff's claims]." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "More specifically, to survive scrutiny under Rule 8, a complaint must disclose sufficient information to permit *each* defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Ratermann v. Pierre Fabre USA, Inc.*,

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.
[2] All references to the Rules are to the Federal Rules of Civil Procedure.

651 F. Supp. 3d 657, 664 (S.D.N.Y. 2023) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

The Court concludes, based on a review of the Complaint, that Pinkfong does not engage in impermissible group pleading. It is true that Count II of the Complaint is titled, "Infringement of Registered Trademarks Against All Defendants." Compl. at 32. But there is also a dedicated section of the Complaint titled "The Alibaba Defendants' Wrongful and Infringing Conduct," which specifies the particular factual allegations that apply to Alibaba Defendants. *Id.* at 19. In that section, Pinkfong alleges, among other things, that Alibaba Defendants sold and purchased keywords comprised of Baby Shark trademarks, sent promotional emails promoting counterfeit Baby Shark products, and marketed counterfeit products involving Baby Shark trademarks. *Id.* at 19-30. Pinkfong thus provides factual bases to distinguish Merchant Defendants' conduct from Alibaba Defendants' conduct such that Alibaba Defendants are sufficiently on notice for Rule 8 purposes. The Court therefore declines to dismiss Pinkfong's direct trademark infringement claim on Rule 8 grounds.

      b. *The Adequacy of Pinkfong's Direct Trademark Infringement Allegations*

With respect to Alibaba Defendants' argument that Pinkfong has not adequately alleged a direct trademark infringement claim, the Court concludes that it has and therefore declines to grant Alibaba Defendants' motion to dismiss this claim.

"To prevail on a [direct] trademark infringement claim . . . a plaintiff must first show that it owns a valid mark entitled to protection under the statute that the defendant used in commerce, without the plaintiff's consent and in connection with the sale or advertising of goods or services." *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493, 2019 WL 5199431, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Merck & Co. v. Mediplan Health Consulting Inc.*, 425 F. Supp. 2d 402,

410-11 (S.D.N.Y. 2006)).  In addition, "[t]he plaintiff must then show that the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Id*.

Pinkfong's Complaint sufficiently alleges trademark ownership, which Alibaba Defendants do not dispute. *Id*. ¶¶ 19-20.  Pinkfong also alleges Alibaba Defendants promote counterfeit products utilizing Baby Shark trademarks without their consent in "promotional emails" sent to "subscribers," including Plaintiff's counsel. *Id*. ¶¶ 85, 112.  Included with the Complaint are screenshots from Alibaba Defendants' emails promoting products—products Pinkfong alleges are not authentic nor being sold by authorized retailers—that clearly use Pinkfong's Baby Shark trademark:





*Id.* ¶¶ 85, 112; Compl. Ex. E, at 6, 23, ECF No. 11-5.  In addition to the promotional emails, Pinkfong alleges Alibaba Defendants "engag[e] in targeted affiliate marketing" to "promote Counterfeit Products on the Alibaba Platforms" involving their Baby Shark trademarks.  *Id.* ¶¶ 89, 93.  Specifically, Pinkfong alleges sponsored advertisements for counterfeit products on Alibaba directed Plaintiff's counsel to the following listings from two Merchant Defendants:



*Id.* ¶¶ 89-92.  These listings advertise a product Pinkfong alleges is "virtually identical" to their own Baby Shark product, shown here:

5



*Id.* ¶ 53.

At this stage of litigation, Pinkfong's allegations are sufficient to state a claim for direct trademark infringement. The names of the allegedly counterfeit products included in Alibaba Defendants' promotional emails use Pinkfong's exact trademark, plausibly creating consumer confusion as to the source of the product. Likewise, given the visual similarity between the allegedly counterfeit products promoted in Alibaba Defendants' targeted advertisements and Pinkfong's own Baby Shark product, it is plausible that consumers might believe those products are associated with Pinkfong. The Court therefore denies Alibaba Defendants' motion to dismiss Pinkfong's direct trademark infringement claim.[3]

## II. False Designation and Unfair Competition under the Lanham Act and New York Law.

"[I]t is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y 2002); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.

---

[3] Pinkfong also alleges that Alibaba Defendants engaged in direct trademark infringement through the purchase and sale of keywords comprised of Baby Shark trademarks. Compl. ¶ 86-88. Because the Court holds that Pinkfong has sufficiently stated a claim for direct infringement based on its allegations pertaining to promotional emails and targeted marketing, it need not and does not address these particular allegations.

Supp. 2d 463, 519 (S.D.N.Y. 2008) ("Tiffany's Section 43(a) claims are governed by the same legal analysis as its federal infringement claims."). Therefore, for the same reasons the Court declines to dismiss Pinkfong's direct trademark infringement claim, it also declines to dismiss Pinkfong's claims for false designation and unfair competition under the Lanham Act.

The legal standards for unfair competition under New York law are likewise "'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that the New York common law claims 'require[] an additional showing of bad faith.'" *Lopez*, 2019 WL 5199431, at *17 (quoting *Lopez v. BigCommerce, Inc.*, No. 16 Civ. 8970, 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017)). "In analyzing whether a defendant has acted in bad faith, the question is whether the defendant attempted 'to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products.'" *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 251 (E.D.N.Y. 2021) (quoting *Tiffany and Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020)). "Even where there is no direct evidence of intent, 'if there is additional evidence that supports the inference that the defendant sought to confuse consumers as to the source of the product, . . . the inference of bad faith may fairly be drawn.'" *Id.* (citing *Kelly-Brown v. Winfrey*, 717 F.3d 295, 312 (2d Cir. 2013)).

Here, Pinkfong alleges that Alibaba Defendants' continued use of the Baby Shark trademark has been "deliberate and committed with knowledge of [their] rights and goodwill in the Baby Shark Marks, as well as with bad faith and the intent to cause confusion, mistake and deception." *Id.* ¶ 116. More specifically, Alibaba Defendants have allegedly been aware of Pinkfong's Baby Shark trademark since at least August 2019, i.e., when Pinkfong brought the first of seven lawsuits against sellers on Alibaba Defendants' Platforms for infringing their Baby

7

Shark trademark. Compl. ¶¶ 62-63, 110. Yet, Alibaba Defendants have allegedly continued to use the Baby Shark trademark, including in promotional emails advertising allegedly counterfeit Baby Shark products. *Id.* ¶¶ 85, 112; Compl. Ex. E. As discussed above, such use of Pinkfong's exact trademark plausibly causes consumers to be confused as to the source of the product. Thus, Pinkfong has "pled facts that indicate [Alibaba] Defendants were aware of the existence of" their Baby Shark trademark and "nevertheless proceeded to use it," *Shandong* at 251-52, plausibly causing confusion as to the source of the product and, consequently, supporting an inference of bad faith. Accordingly, at this stage, the Court declines to dismiss Pinkfong's New York common law claim.

### III. Contributory Trademark Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement.

Pinkfong has plausibly stated claims for contributory trademark infringement, contributory copyright infringement, and vicarious copyright infringement by alleging that Alibaba Defendants (1) had knowledge of Merchant Defendants' alleged infringements, (2) had the ability to control the alleged infringements, (3) assisted in the alleged infringements, and (4) financially benefitted from the alleged infringements.[4]

---

[4] "To state a claim for contributory trademark infringement, a plaintiff must allege that defendant either (1) intentionally induced another to infringe a trademark or (2) continued to supply its product or service to one whom it knew or had reason to know was engaging in trademark infringement." *King Spider LLC v. 884886 CH Store*, No. 23 Civ. 3472, 2024 WL 3184674, at *1 (S.D.N.Y. June 26, 2024) (quoting *Lopez*, 2019 WL 5199431, at *14). Where "a plaintiff alleges a service provider's contributory liability, it is required to allege that said service provider had more than a general knowledge or reason to know that its service is being used to [infringe a trademark], and sufficient control over infringing activity to merit liability." *Id.*

"To state a claim for contributory copyright infringement, a plaintiff must allege that a party with 'knowledge of the infringing activity[] induce[d], cause[d], or materially contribut[ed] to the infringing conduct of another.'" *White v. DistroKid*, 738 F. Supp. 3d 387, 403 (S.D.N.Y. 2024) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010)). "To constitute a 'material contribution,' it must be alleged that defendant had '(1) had actual or constructive knowledge of the infringing activity, and (2) encouraged or assisted others' infringement, or

Here, Pinkfong alleges Alibaba Defendants "were made aware of several Merchant Defendants" and their "specific infringing and counterfeiting activities" when they were "named in Previous Actions," i.e., seven separate lawsuits, brought by Pinkfong against merchants on Alibaba Defendants' platforms for violating their "Baby Shark Marks and Baby Shark Works." Compl. ¶¶ 63-64.  Likewise, Pinkfong alleges Alibaba Defendants were "made aware" when Incopro, a third-party company offering online brand protection services, submitted takedown requests to remove counterfeit products through Alibaba Defendants' platforms.  *Id.* ¶¶ 45, 64. Despite this awareness, Pinkfong alleges, Merchant Defendants have been allowed to continue selling counterfeit products on Alibaba Defendants' platforms.  *Id.* ¶ 70.

In their Complaint, Pinkfong further alleges Alibaba Defendants continue to "supply and control[] the instrumentality for Merchant Defendants' . . . infringing and counterfeiting activities, including the manufacture, importation, exportation, advertising, marketing, promotion distribution, display, [and] offering for sale and/or sale of Counterfeit Products."  *Id.* ¶ 152; *see*

---

provided machinery or goods that facilitated infringement.'"  *Id.* (quoting *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)).  "As for the knowledge prong, '[t]he knowledge standard is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement.'"  *Id.* (quoting *Arista*, 604 F.3d at 118).  "Thus, 'participation sufficient to establish a claim of contributory infringement may not consist of merely providing the means to accomplish an infringing activity.'"  *Id.* (quoting *Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928, 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021)).  Rather, "the plaintiff must allege that the defendant 'substantially' participated in the infringing act and 'acted in concert with the direct infringer.'"  *Id.* (quoting *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21 Civ. 3610, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022)).

Finally, "[v]icarious liability for copyright infringement may arise only when the defendant had the 'right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'"  *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 22 Civ. 3007, 2023 WL 6842449, at *3 (2d Cir. Oct. 17, 2023) (quoting *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016)).  "In other words, a party 'infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'"  *Id.* (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

*also id.* ¶¶ 71-78, 85-87, 89, 93-96.  Therefore, Pinkfong alleges, Alibaba Defendants have the "right and ability to control and supervise the Merchant Defendants' . . . unlawful and infringing activities occurring on the Alibaba Platforms" but have "refused and/or failed" to do so, thereby allowing Merchant Defendants' infringement to continue.  *Id.* ¶¶ 169-70.

Additionally, Pinkfong alleges Alibaba Defendants have assisted and promoted Merchant Defendants' alleged infringement, including by granting Merchant Defendants "Gold Supplier" and "Verified Supplier" status; purchasing keywords comprised of Baby Shark trademarks to promote counterfeit products; selling keywords comprised of Baby Shark trademarks to sellers of counterfeit products, including Merchant Defendants; and promoting counterfeit products in promotional emails.  *Id.* ¶¶ 76-87; Compl. Ex. E.

And finally, Pinkfong alleges Alibaba Defendants benefit financially from the Merchant Defendants' infringing conduct, including by "attract[ing], engag[ing], and retain[ing] customers," selling merchants upgraded services (e.g., Gold Supplier Status), and earning commission from transactions.  *Id.* ¶¶ 73-78.

In sum, Pinkfong's allegations, taken together and assumed to be true, adequately support their contributory trademark infringement, contributory copyright infringement, and vicarious copyright infringement claims against Alibaba Defendants.

## CONCLUSION

For the reasons stated herein, Alibaba Defendants' motion to dismiss is **DENIED.**  The Clerk of Court is respectfully directed to terminate ECF No. 37.

SO ORDERED.

_____
DALE E. HO
United States District Judge
3/27/2025